

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JUSTINA O.,

        Plaintiff,

    v.                                 1:20-CV-00177 (JLS)

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____

## DECISION AND ORDER

Plaintiff Justina O.[1] ("Plaintiff") brought this action under the Social Security

Act, seeking review of a determination by the Commissioner of Social Security (the

"Commissioner") that she was not disabled. Dkt. 1. Plaintiff moved for judgment

on the pleadings. Dkt. 9. The Commissioner responded and cross-moved for

judgment on the pleadings. Dkt. 10. Plaintiff replied. Dkt. 11.

For the reasons below, this Court grants Plaintiff's motion in part and denies

the Commissioner's cross-motion.

## PROCEDURAL HISTORY

On September 12, 2016, Plaintiff applied for Disability Insurance Benefits

("DIB") and protectively applied for Supplemental Security Income ("SSI"), alleging

---

[1] Pursuant to the Western District of New York's November 18, 2020 Standing
Order regarding the naming of plaintiffs in Social Security decisions, this Decision
and Order identifies Plaintiff by first name and last initial.

her disability began on August 1, 2010. Tr. 14.[2] Her claims were initially denied by

the Social Security Administration on December 13, 2016. *Id.* Plaintiff then filed a

written request for a hearing on January 12, 2017, which took place before an

Administrative Law Judge ("ALJ") on October 29, 2018. *Id.* The ALJ issued an

unfavorable decision to Plaintiff on December 11, 2018, confirming that she was not

disabled. Dkt. 9, at 1-2. The Appeals Council denied Plaintiff's request for review

on December 12, 2019. *Id.* at 2. Plaintiff then commenced this action. *Id.*

## LEGAL STANDARDS

### I.    District Court Review

The scope of review of a disability determination involves two levels of

inquiry. *See Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). First, the Court

must "decide whether [the Commissioner] applied the correct legal principles in

making the determination." *Id.* The Court's review for legal error ensures "that the

claimant has had a full hearing under the . . . regulations and in accordance with

the beneficent purposes" of the Social Security Act. *See Moran v. Astrue*, 569 F.3d

108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).

Second, the Court "decide[s] whether the determination is supported by 'substantial

evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" is "more than a mere scintilla" and "means such

relevant evidence as a reasonable mind might accept as adequate to support a

---

[2] Dkt. 6 is the transcript of proceedings before the Social Security Administration. All references to Dkt. 6 are denoted "Tr. __."

conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotations and citations omitted).  The Court does not "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (internal quotations and citations omitted).  But "the deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003).  Indeed, if "a reasonable basis for doubt whether the ALJ applied correct legal principles" exists, applying the substantial evidence standard to uphold a finding that the claimant was not disabled "creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## II.   Disability Determination

The ALJ evaluated Plaintiff's claim under the Social Security Administration's five-step process for disability determinations.  *See* 20 C.F.R. § 416.920(a)(2).  At the first step, the ALJ determines whether the claimant currently is engaged in substantial gainful employment.  *Id.* § 416.920(a)(4)(i).  If so, the claimant is not disabled.  *Id.*  If not, the ALJ proceeds to step two.  *Id.* § 416.920(a)(4).

At step two, the ALJ decides whether the claimant suffers from any severe impairments.  *Id.* § 416.920(a)(4)(ii).  If there are no severe impairments, the claimant is not disabled.  *Id.*  If there are any severe impairments, the ALJ proceeds to step three.  *Id.* § 416.920(a)(4).

3

At step three, the ALJ determines whether any severe impairment or combination of impairments meets or equals an impairment listed in the regulations. *Id.* § 416.920(a)(4)(iii). If the claimant's severe impairment or combination of impairments meets or equals an impairment listed in the regulations, the claimant is disabled. *Id.* But if the ALJ finds that no severe impairment or combination of impairments meets or equals any in the regulations, the ALJ proceeds to step four. *Id.* § 416.920(a)(4).

As part of step four, the ALJ first determines the claimant's residual functional capacity ("RFC"). *See id.* § 416.920(a)(4)(iv); *id.* §§ 416.920(d)-(e). The RFC is a holistic assessment of the claimant that addresses the claimant's medical impairments—both severe and non-severe—and evaluates the claimant's ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for her collective impairments. *See id.* § 416.945. After determining the claimant's RFC, the ALJ completes step four. *Id.* § 416.920(e). If the claimant can perform past relevant work, she is not disabled and the analysis ends. *Id.* § 416.920(f). But if the claimant cannot perform past relevant work, the ALJ proceeds to step five. *Id.* § 416.920(a)(4)(iv); *id.* § 416.920(f).

In the fifth and final step, the Commissioner must present evidence showing that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. *See id.* §§ 416.920(a)(4)(v), (g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). Specifically, the Commissioner must prove that the claimant "retains a residual functional capacity to perform alternative

4

substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quoting *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986)).

## DISCUSSION

### I.   The ALJ's decision

The ALJ analyzed Plaintiff's claims by applying the five-step process outlined above.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 1, 2010.  Tr. 12.

At step two, the ALJ determined that Plaintiff had the following severe impairments: "degenerative disc disease of the cervical spine, status post cervical spine fusion, degenerative disc disease of the lumbar spine, chronic right knee pain, and carpal tunnel syndrome (bilateral wrist and hand pain)."  *Id.*  The ALJ followed the Disability Determination Service's opinion that "the [claimant's] [mental] health impairments are non-severe."  *Id.* at 13.

At step three, the ALJ determined that none of Plaintiff's impairments "meet[] or medically equal[] the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  *Id.*  Specifically, the ALJ found that "[t]he criteria of section 1.04 (disorders of the spine) are unsatisfied."  *Id.*

At step four, the ALJ determined that Plaintiff had the residual functional capacity to perform sedentary work.  *Id.* at 13-14.

At step five, the ALJ determined that Plaintiff could perform past relevant work as a debt collector. *Id.* at 16. Accordingly, the ALJ concluded that Plaintiff is not disabled. *Id.* at 18.

## II.   Analysis

Plaintiff asks the Court to grant her motion for judgment on the pleadings or, alternatively, to vacate the Commissioner's decision and remand for a new administrative hearing. Dkt. 9, at 30. Plaintiff makes four arguments. *Id.* at 1. First, she asserts that the ALJ did not properly consider her mental non-exertional limitations and failed to apply "the special technique." *Id.* Second, Plaintiff claims that the ALJ erred at step three by failing to address evidence that "persuasively shows that the requirements of Listing 1.04A are met." *Id.* Third, Plaintiff argues that the ALJ's RFC finding is unsupported by substantial evidence. Fourth, she argues that the ALJ's consistency finding is similarly unsupported by substantial evidence. *Id.*

For the reasons set forth below, Plaintiff's first argument has merit and, as such, her motion is granted in part.

## A.   The ALJ erred by failing to properly consider Plaintiff's mental non-exertional limitations and by failing to apply the special technique.

At step two, the ALJ determined that Plaintiff's mental health impairments were non-severe and that she suffered from "mild limitations in all four domains." Tr. 13. To support her determination, the ALJ briefly referenced the Disability Determination Service's opinion, a psychiatric consultative opinion, and parts of Plaintiff's testimony from the hearing. *Id.*

6

When determining the existence and severity of a claimant's mental health impairments, "the Commissioner has promulgated . . . regulations . . . [that] require application of a 'special technique' at the second and third steps of the five-step framework . . . and at each level of administrative review." *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (citing *Schmidt v. Astrue*, 496 F.3d 833, 844 n.4 (7th Cir. 2007), and 20 C.F.R. § 404.1520a(a)). "Failure to apply the correct legal standard constitutes reversible error," including the "failure to adhere to the applicable regulations." *Kohler*, 546 F.3d at 265 (citing *Pollard v. Halter*, 377 F.3d 183, 189 (2d Cir. 2004), and *Schaal v. Apfel*, 134 F.3d 496, 504-05 (2d Cir. 1998)).

Under the special technique, the ALJ first must determine whether the claimant has a "medically determinable mental impairment." 20 C.F.R. § 404.1520a(b)(1). "[A] . . . mental impairment must be established by objective medical evidence from an acceptable medical source." *Id.* § 404.1521. The ALJ is required to "specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s)" and to "document application of the technique in the decision." *Id.* § 404.1520a(b)(1); *Id.* § 404.1520a(e).

If an impairment is found, the ALJ then must "rate the degree of functional limitation resulting from the impairment(s)" by applying a five-point scale to four broad functional areas, or domains, identified as the ability to: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. *Id.* § 404.1520a(c)(3). Per the regulations, assessment of a claimant's functional limitations "is a complex and

highly individualized process." *Id.* § 404.1520a(c)(1). The five-point scale, which rates the degree of functional limitation from "none" to "extreme," is used to determine if the claimant's mental limitations are severe and, if so, if the claimant's medically determinable impairment meets or equals the criteria of a listed mental disorder. *Id.* §§ 404.1520a(d)(1)-(2). The ALJ's written decision must "incorporate the pertinent findings and conclusions based on the technique . . . [and] show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)." *Id.* § 404.1520a(e)(4).

Here, the ALJ relied on two medical evaluations in determining that Plaintiff's mental health impairments were non-severe. Tr. 13. The Disability Determination Service's opinion, to which the ALJ "afford[ed] significant weight," found that Plaintiff suffered from affective disorders and anxiety disorders. Tr. 84. In support of this opinion, a psychiatric consultative examiner diagnosed Plaintiff with "adjustment disorder with depression and anxiety." Tr. 391.

Based on these evaluations, the ALJ was required to proceed to the next step of the administrative review process, requiring her to "rate the degree of [Plaintiff's] functional limitation resulting from the impairment(s)." 20 C.F.R. § 404.1520a(b)(2). This step, as mentioned above, involves explicitly rating the claimant's functional limitations in four predetermined domains on a five-point scale. *Id.* § 404.1520a(c)(4).

8

Here, the ALJ merely stated that, "[i]n terms of the paragraph 'B' criteria, I have determined that the claimant has mild limitations in all four domains."[3]  Tr. 13.  The ALJ provided no further analysis on the paragraph B criteria.  It is not clear what specific medical evidence the ALJ relied on in determining that Plaintiff suffered from mild limitations in each of the four domains besides the Disability Determination Service's opinion.  *See id.*  That opinion—which the ALJ found to be "significant and consistent with the medical evidence of record"—noted that Plaintiff "does not appear to have any evidence of limitations" in completing several tasks, including the ability to "follow and understand simple directions and instructions, perform simple tasks independently, [or] maintain a regular schedule . . . ." Tr. 89.  The opinion also stated that Plaintiff did "appear[] to have mild limitations in the ability to maintain attention and concentration and perform complex tasks independently due to difficulties with memory." *Id.*  The categories and assessments in this opinion do not match the paragraph B criteria analysis, and, thus, are not a substitute for the special technique.

The ALJ's decision does not reflect a careful consideration of the four functional domains, much less a detailed application of the five-point scale as required by the regulations.  *See* 20 C.F.R. § 404.1520a(c),(e); *Kohler*, 546 F.3d at 266 ("[T]he regulations . . . require the ALJ's written decision to reflect application of the technique, and explicitly provide that the decision '*must* include a specific

---

[3] The "paragraph 'B' criteria" in the Listing of Impairments are identical to the four broad functional areas, *supra*, from 20 C.F.R. § 404.1520a(c)(3).  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.00E(1)-(4).

9

finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.'") (quoting § 404.1520a(e)(2)).

By itself, the ALJ's failure to apply the special technique does not constitute *per se* reversible error. *See Armijo v. Astrue*, 385 F. App'x 789, 792 (10th Cir. 2010) (although the ALJ's failure to apply the special technique was error, "[w]e may apply harmless error in the social security context 'where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder . . . could have resolved the factual matter in any other way.'") (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004)); *Kohler*, 546 F.3d at 269 ("While we leave open the possibility that an ALJ's failure to adhere to the regulations' special technique might under other facts be harmless," remand is appropriate where the court "can neither identify findings regarding the degree of [the claimant's] limitations in each of the four functional areas nor discern whether the ALJ properly considered all evidence relevant to those areas."); *see generally Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) (applying the "harmless-error rule" in administrative as well as civil cases) (internal quotation marks omitted).

This case, however, is distinguishable from *Armijo*. There, "there was nothing in the record before the ALJ to suggest that [the claimant's] depression caused functional limitations in any of the four broad functional areas." *Id.* at 792-93. Here, the medical record contains multiple references to symptoms of mental impairments that caused functional limitations, including apparent anxiety,

10

depressed mood, poor focus, and mood swings. Tr. 293, 300, 304, 377, 445. She was referred for counseling and made an appointment with a psychiatrist for anxiety. Tr. 441, 445. As noted above, the Disability Determination Service concluded that Plaintiff's mental impairments caused "mild limitations" in her performance of certain tasks. Tr. 89.

Courts "have not hesitated to remand where an ALJ's noncompliance with § 404.1520a results in an inadequately developed record with respect to the four functional categories," *Kohler*, 546 F.3d at 266-67; thus, the ALJ's apparent failure to apply the special technique in evaluating Plaintiff's mental impairments, and to record doing so in a way that reflects application of the technique, cannot be considered harmless. *See Patterson v. Comm'r of Soc. Sec.*, 846 F.3d 656, 662 (4th Cir. 2017) ("failure to properly document application of the special technique will rarely . . . be harmless because such a failure prevents, or at least substantially hinders, judicial review.") (citing, *inter alia, Kohler*); *Jenkins v. Comm'r of Soc. Sec.*, 769 F. Supp. 2d 157, 162 (W.D.N.Y. 2011) ("the Court is not free to engage in speculation concerning what the ALJ might have concluded had the technique been applied in the first instance."); *Faison v. Berryhill*, No. 6:16-cv-06055(MAT), 2017 WL 3381055, at *3 (W.D.N.Y. Aug. 5, 2017) (where "remand was necessary because the ALJ's failure to adhere to the Regulations frustrated meaningful appellate review.").

The ALJ's failure to document application of the special technique, in light of the record in this case, requires remand for further proceedings.

11

B.     **The ALJ did not err at step three by failing to address evidence that persuasively shows the requirements of Listing 1.04A were met.**

Regarding her physical impairments, Plaintiff asserts that the ALJ did not properly consider evidence at step three that "persuasively shows" she met the requirements of Listing 1.04A concerning disorders of the spine.[4] Dkt. 9, at 16. Specifically, Plaintiff contends that the ALJ's mere reiteration of the requirements of the listing and failure to cite evidence in the record supporting her conclusion that Plaintiff's impairments did not meet the listing warrants remand. *Id.*

A claimant is deemed disabled at step three if their impairments meet or medically equal the specific requirements of one or more of the medical listings in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* § 416.920(a)(4)(iii). At step three, the ALJ determined that:

> The criteria of section 1.04 . . . are unsatisfied as there is no evidence of nerve root compromise with (A) evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss . . . accompanied by sensory or reflex loss and . . . positive straight-leg raising test . . . .

---

[4] Listing 1.04A reads as follows:

> *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

Tr. 13.  Plaintiff argues that the ALJ did not address evidence that shows that she

met the requirements of Listing 1.04A.  Dkt. 9, at 16.  This Court disagrees and

concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's

impairment did not meet the requirements of the listing.

     Remand is only appropriate where the Court is "unable to fathom the ALJ's

rationale in relation to evidence in the record."  *Berry v. Schweiker*, 675 F.2d 464,

469 (2d Cir. 1982).  The burden of proving a medically determinable impairment

rests on the claimant.  *See Bowen*, 482 U.S. at 146 (1987); *see also Mathews v.

Eldridge*, 424 U.S. 319, 336 (1976) ("In order to establish initial and continued

entitlement to disability benefits," a claimant "bears a continuing burden of

showing, by means of 'medically acceptable clinical and laboratory diagnostic

techniques' . . . that he has a physical or mental impairment").  This burden extends

to *all* criteria necessary to establish an impairment.  *Sullivan v. Zebley*, 493 U.S.

521, 531 (1990).

     Therefore, to satisfy Listing 1.04A and successfully argue that substantial

evidence does not support the ALJ's determination that Plaintiff's impairments did

not meet or medically equal the listing's requirements, Plaintiff must prove each of

the following: (1) that she suffers from a disorder of the spine resulting in

compromise of a nerve root or the spinal cord with (2) evidence of nerve root

compression characterized by (a) neuro-anatomic distribution of pain, (b) limitation

of motion of the spine, (c) motor loss accompanied by sensory or reflex loss, and (d)

(since there is involvement of the lower back) positive straight-leg raising test

(sitting and supine).  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04A; *Ramirez Morales v. Berryhill*, No. 6:17-cv-06836-MAT, 2019 WL 1076088, at *4 (W.D.N.Y. Mar. 7, 2019).

1.   **Plaintiff suffered from a disorder of the spine that resulted in the compromise of a nerve root.**

The ALJ found that Plaintiff suffered from severe degenerative disc disease of the cervical spine and lumbar spine.  Tr. 12.  Additionally, the medical record shows diagnoses of, and treatment for, lumbosacral radiculopathy and cervical disc disorder with radiculopathy post-dating Plaintiff's May 2011 spinal surgery.  Tr. 342, 353, 445, 453.  Radiculopathy is defined as a "[d]isorder of the spinal nerve roots."  *Radiculopathy*, Stedmans Medical Dictionary 748650; *see Oz v. Lorowitz*, No. 09 Civ. 5532(LAP), 2012 WL 4560460, n. 3 (S.D.N.Y. Sept. 30, 2012) (citing *Radiculopathy*, Free Merriam-Webster Dictionary, http://www.merriam-webster.com/dictionary/radiculopathy (defining radiculopathy as "irritation of or injury to a nerve root")).  Radiculopathy alone may establish compromise of a nerve root.  *See Parks v. Comm'r of Soc. Sec.*, 1:19-CV-00505 EAW, 2020 WL 3542123 (W.D.N.Y. June 30, 2020); *Mosley v. Comm'r of Soc. Sec.*, 19-CV-201 HBS, 2020 WL 2553016, at *3 (W.D.N.Y. May 20, 2020); *Norman v. Astrue*, 912 F. Supp. 2d 33, 78 (S.D.N.Y. 2012) (finding that cervical and lumbar radiculopathy evidenced nerve root compression).  Therefore, Plaintiff suffered from multiple disorders of the spine that resulted in the compromise of her nerve root.

2.    **Plaintiff did not provide evidence demonstrating nerve root compression with (a) neuro-anatomic distribution of pain, (b) limitation of motion of the spine, (c) motor loss accompanied by sensory or reflex loss, and (d) (since there is involvement of the lower back) positive straight-leg raising test (sitting and supine).**

While "nerve root compression," the second requirement of Listing 1.04A, may be satisfied with a diagnosis of radiculopathy, *see Parks*, 2020 WL 3542123, at *4, Plaintiff is incorrect in asserting that "a diagnosis of radiculopathy is synonymous with nerve root compression." Dkt. 11, at 2. A claimant "must meet *all* of the specified medical criteria." *Sullivan*, 493 U.S. at 531. Thus, absent an express diagnosis of nerve root compression, evidence must establish each of the criteria noted above that "characterize" nerve root compression. *See Sanders v. Comm'r of Soc. Sec.*, 506 F. App'x 74, 76 (2d Cir. 2012) (declining to allow "radicular symptoms" to establish nerve root compression where other evidence contradicts those findings, and the plaintiff cannot establish other listing requirements); 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04A.

The record is replete with references to neuro-anatomically distributed pain. Tr. 248, 253, 256, 259, 293-99, 300-04, 306, 308-09, 314, 323-37, 345, 357, 362-64, 366-67, 373, 379, 384-85, 393-94, 417-20, 422, 428, 432-33, 445, 493-96. Furthermore, the listing's requirement of evidence of neuro-anatomically distributed pain is generally satisfied by the ongoing diagnoses of radiculopathy (Tr. 342, 353), which "typically causes pain, numbness, or weakness in . . . part[s] of the body." *Radiculopathy*, Free Merriam-Webster Dictionary, http://merriam-webster.com/dictionary/radiculopathy.

15

Evidence in the record also clearly demonstrates limitation of motion of Plaintiff's spine both before and after her May 2011 surgery.  Tr. 296, 302, 305, 309, 311, 315-22, 323-36, 375-77, 379-84, 395, 429, 433, 441, 445, 449, 453, 457, 461, 464, 467, 493-94.

Additionally, Dr. Hongbiao Liu's 2016 examination of Plaintiff supports a finding of positive straight-leg raising test in both the sitting and supine positions. Tr. 395.

Finally, Plaintiff contends that evidence in the record supports a finding of "motor loss (['demonstrated by'] atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss . . ." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04A; *Yeomas v. Colvin*, No. 13–CV–6276P, 2015 WL 1021796, at *19 (W.D.N.Y. Mar. 10, 2015). "Inability to walk on the heels or toes, to squat, or to arise from a squatting position, when appropriate, may be considered evidence of significant motor loss." *Id.* Pt. 404, Subpt. P, App. 1 § 1.00(E)(1). And "atrophy is not acceptable as evidence of significant motor loss without circumferential measurements of both thighs and lower legs . . . at a stated point above and below the knee . . . given in inches or centimeters." *Id.* In Dr. Liu's 2016 examination, Plaintiff was unable to walk on her heels or toes due to back pain. Tr. 394. Circumference measuring of Plaintiff's legs was performed on May 21, 2015, which revealed atrophy. Tr. 321.

While the record is replete with evidence of limited strength or muscle weakness (Tr. 296, 302, 304, 306, 308-09, 311, 314, 321, 323-36, 378, 420, 453, 493),

16

it is unclear how related these symptoms are to Plaintiff's spinal impairment. Plaintiff also cites findings of numbness and decreased sensation in her extremities as evidence of sensory or reflex loss. Tr. 293-99, 304, 308, 378, 383, 385, 395, 421-27. These are similarly unconvincing, especially since the ALJ noted in her decision that Plaintiff suffers from severe carpal tunnel syndrome, or "bilateral wrist and hand pain." Tr. 12. Ultimately, the ALJ's determination that Plaintiff failed to prove muscle weakness and sensory or reflex loss caused by her spinal impairment is supported by substantial evidence.

Despite evidence provided by Plaintiff, the ALJ's determination that she did not meet or medically equal the requirements of Listing 1.04A is not unfathomable. *See Berry*, 675 F.2d at 469. "It is the plain-tiff's [sic] burden to 'demonstrate that [his] disability [meets] "all of the specified medical criteria"' of a spinal disorder." *Ryan v. Astrue*, 5 F. Supp. 3d 493, 507 (S.D.N.Y. 2014) (quoting *Otts v. Comm'r of Soc. Sec.*, 249 F. App'x 887, 888 (2d Cir. 2007)). While the ALJ could have, and probably should have, specified what evidence she used at step three to determine Plaintiff's impairments did not meet or equal the listing's requirements, "the absence of an express rationale does not prevent us from upholding the ALJ's determination regarding appellant's claimed listed impairments, since portions of the ALJ's decision and evidence before [her] indicate that [her] conclusion was supported by substantial evidence." *Berry*, 675 F.2d at 469. Accordingly, Plaintiff has not persuasively shown that the requirements of Listing 1.04A are met and that she should have been declared disabled.

17

## III.   Plaintiff's remaining claims

Plaintiff also argues that the ALJ's RFC finding is unsupported by substantial evidence, and that the ALJ failed to evaluate properly Plaintiff's symptoms in light of the evidence in the record.  Dkt. 9, at 1.  Because this Court remands for further administrative proceedings for other reasons, these arguments will not be addressed here.  *See, e.g., Insalaco v. Comm'r of Soc. Sec.*, 366 F. Supp. 3d 401, 410 (W.D.N.Y. 2019) (declining to reach additional arguments where the court had determined remand for further administrative proceedings was necessary); *Bell v. Colvin*, No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (same); *Morales v. Colvin*, No. 13cv06844 (LGS) (DF), 2015 WL 2137776, at *28 (S.D.N.Y. Feb. 10, 2015) (determining that the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand"), *adopted*, 2015 WL 2137776 (S.D.N.Y. May 4, 2015).

## CONCLUSION

For the reasons stated above, Plaintiff's motion for judgment on the pleadings (Dkt. 9) is **GRANTED** in part, and the Commissioner's cross-motion for judgment on the pleadings (Dkt. 10) is **DENIED**. The decision of the Commissioner is **VACATED**, and the matter is **REMANDED** for further administrative proceedings consistent with this opinion.


SO ORDERED.


Dated:       July 26, 2021
             Buffalo, New York


                         _____
                         JOHN L. SINATRA, JR.
                         UNITED STATES DISTRICT JUDGE

19